UNITED STATES, Appellee,

v.

Scott E. RADVANSKY, Airman Basic
U.S. Air Force, Appellant.

No. 95–0771.
Crim.App. 30737.

U.S. Court of Appeals for
the Armed Forces.

Argued April 10, 1996.

Decided Sept. 30, 1996.

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Michael J. Breslin* (on brief).

*Opinion of the Court*

SPARR, District Judge:[1]

Appellant was convicted by a general court-martial at Beale Air Force Base, California, of wrongful use of methamphetamine, pursuant to his conditional plea of guilty;[2] wrongful appropriation of an automobile of a value of $500.00, pursuant to his plea of guilty to a lesser-included offense; and a 1–day absence without authority terminated by apprehension, pursuant to his plea of guilty, in violation of Articles 112a, 121, and 86, Uniform Code of Military Justice, 10 USC §§ 912a, 921, and 886, respectively. Appellant was acquitted of wrongful use of cocaine; marijuana; and methamphetamine (2 specifications), also violations of Article 112a.

Appellant was sentenced by the panel of officer members to a bad-conduct discharge, 90 days' confinement, and total forfeitures. The convening authority reduced the forfeitures to $543.00 pay per month for 3 months, but otherwise approved the sentence. On March 30, 1995, the Court of Criminal Appeals in an unpublished opinion found the pleas of guilty to wrongful appropriation of the automobile improvident, dismissed the Charge, and reassessed the sentence by reducing the confinement to 60 days but otherwise affirming the approved sentence.

This case originally involved, *inter alia,* five specifications of wrongful use of various drugs, arising from separate urinalyses. The issue of appellant's consent to the three urinalyses was fully litigated at trial. The military judge granted the defense motions to suppress the results of the urinalyses performed on February 23 and 25, 1993, but denied the defense motion to suppress the results of the urinalysis performed on December 9, 1992. The validity of that urinalysis is now before us.

For Appellant: *Major Del Grissom* (argued); *Colonel Jay L. Cohen* (on brief).

1. Judge Daniel B. Sparr of the United States District Court for the District of Colorado, sitting by designation pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 142(f).

2. His plea of guilty was conditioned upon preservation of the issue of admissibility of the urinalysis at trial.

On April 17, 1995, the Court of Criminal Appeals denied appellant's Motion for Reconsideration (*en banc*). Appellant reiterates before us his position at the suppression hearing concerning the validity of his consent to the urinalysis in question. The issue now before this Court[3] is whether the military judge erred in denying appellant's motion to suppress the results of his urinalysis because his consent to the urinalysis was not voluntary. 43 MJ 414.

I

Appellant's supervisor, Master Sergeant (MSgt) DeMarini, noticing appellant's weight loss, a decline in his job performance, that he fell asleep on the job, and that he was "very stressed out," suspected that appellant might be "involved" with drugs. On December 9, 1992, MSgt DeMarini escorted appellant to the first sergeant's office. The first sergeant was not present that day, but a first sergeant trainee, MSgt Isley, a security policeman in training for the first sergeant job, met appellant. MSgt Isley was wearing his security police officer's badge and beret.

MSgt Isley discussed with appellant the observed problems and the unit's suspicions. MSgt Isley had extensive experience as a security policeman in asking for consent to search. MSgt Isley asked appellant to consent to a urinalysis test.

Appellant, a 20–year–old airman basic with 14 months of active duty service, alleged at

trial that he believed that MSgt Isley was a security policeman there to "apprehend" him. Appellant asserted that he was handed a form concerning a consent urinalysis and was told that "he was gonna get a urinalysis from me; either I was to consent or he would see to it that it was command directed." No explanation was given as to the difference between a consensual urinalysis and a command-directed urinalysis, although MSgt Isley was aware of the different effects of a consensual urinalysis and a command-directed urinalysis.[4] According to appellant, he believed that he had no other option but to provide the urine sample. Appellant consented to a urinalysis and signed AF Form 1364, Consent for Search and Seizure.[5] Appellant admitted that he read the consent form before signing it.

MSgt Isley testified that, before appellant signed the consent form, appellant inquired "if he refused to give a consensual search, what were our options, meaning, you know, the—our position; what would we do next." MSgt Isley stated that he responded:

I told him that the only other option that we possibly had was a command directed urinalysis ... As best I can remember, we discussed it saying that it was a possibility that we would have to go in and approach the commander, but at this time it wasn't an issue, that we were looking to see if he would give consent to search.

3. This case was argued at the United States Air Force Academy as part of the Court's "Project Outreach." *See U.S. v. Stinson,* 34 MJ 233, 234 n. * (CMA 1992).

4. "In addition to 'military inspections,' searches of a servicemember's urine for unlawful drugs can be: (1) consensual; (2) 'command directed;' (3) pursuant to an 'authorization to search;' or (4) pursuant to a 'search warrant.'" *United States v. McClain,* 31 MJ 130, 133 (CMA 1990), citing Mil.R.Evid. 315(b)(2), Manual for Courts–Martial, United States, 1984.

  "Military regulations prohibit the results of 'command directed' searches," which are administrative in nature, "from being used in trials by courts-martial." *McClain,* 31 MJ at 133.

5. The consent form signed by appellant on December 9, 1992, and admitted as evidence on the motion to suppress, states in part:

. "I know that I have the legal right to either consent to a search, or to refuse to give my consent. I understand that, if I do consent to a search, anything found in the search can be used against me in a criminal trial or in any other disciplinary or administrative procedure. I also understand that, if I do not consent, a search cannot be made without a warrant or other authorization recognized in law ... Before deciding to give my consent, I carefully considered this matter. I am giving my consent voluntarily and of my own free will, without having been subjected to any coercion, unlawful influence or unlawful inducement and without any promise of reward, benefit, or immunity having been made to me ... I have read and understand this entire acknowledgment of my rights and grant of my consent for search and seizure."

MSgt Isley stated that he did not offer this information as "an ultimatum" and that he made it "clear" that the commander had not yet been approached. In response to questioning by the military judge, MSgt Isley further stated:

I explained that there were other options, that the only thing that we could do besides this, if we so chose, was to approach the commander and give him the information that we had. But at this point there was no reason to do that at all; it was strictly up to him if he wanted to make the decision or not.

According to MSgt DeMarini, MSgt Isley informed appellant "that he can give a sample of his own free will or 'we could have the commander direct you to do so.'" MSgt DeMarini testified that MSgt Isley "asked" appellant for consent, did not "demand" that appellant consent, and did not "make any threats" to induce appellant to consent.

## II

■■■ If the Government relies upon consent to justify the lawfulness of a search, it "has the burden of proving that ... consent ... was freely and voluntarily given." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878–79, 64 L.Ed.2d 497 (1980); *United States v. Goudy,* 32 MJ 88, 90 (CMA 1991); *United States v. White,* 27 MJ 264, 265 (CMA 1988). "[C]onsent ... must be shown by 'clear and convincing evidence.'" *United States v. Murphy,* 39 MJ 486, 489

(CMA 1994); *Goudy,* 32 MJ at 90; Mil. R.Evid. 314(e)(5), Manual for Courts-Martial, United States (1995 ed.).[6] A military judge's determination that a person has voluntarily consented to a search, including a urinalysis, is a factual determination that will "not be disturbed on appeal unless it is unsupported by the evidence or clearly erroneous." *United States v. Kosek,* 41 MJ 60, 64 (CMA 1994); *see United States v. Avery,* 40 MJ 325, 328 (CMA 1994).

■■■ The voluntariness of a person's consent is determined by "the totality of all the circumstances." *Mendenhall,* 446 U.S. at 557, 100 S.Ct. at 1879; *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); Mil.R.Evid. 314(e)(4) and (5). In evaluating the totality of the circumstances, courts should consider, among other things, such factors as the accused's age, education, experience, length of military service, rank, and knowledge of the right to refuse consent, as well as whether the environment was custodial or coercive. *Goudy,* 32 MJ at 90–91. "Although the Constitution does not require 'proof of knowledge of a right to refuse ... consent'" as an essential element or condition of an effective consent to search, "such knowledge [is] highly relevant to the determination that there [was] consent." *Mendenhall,* 446 U.S. at 558–59, 100 S.Ct. at 1879 (citation omitted).

## III

■■■ Appellant asks this Court to establish, contrary to the long-accepted totality-of-the-circumstances analysis, a "bright-line" rule

**6.** Mil.R.Evid. 314(e) provides:

(e) *Consent searches.*

(1) *General rule.* Searches may be conducted of any person or property with lawful consent.

(2) *Who may consent.* A person may consent to a search of his or her person or property, or both, unless control over such property has been given to another. A person may grant consent to search property when the person exercises control over that property.

(3) *Scope of consent.* Consent may be limited in any way by the person granting consent, including limitations in terms of time, place, or property and may be withdrawn at any time.

(4) *Voluntariness.* To be valid, consent must be given voluntarily. Voluntariness is a ques-

tion to be determined from all the circumstances. Although a person's knowledge of the right to refuse to give consent is a factor to be considered in determining voluntariness, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Mere submission to the color of authority of personnel performing law enforcement duties or acquiescence in an announced or indicated purpose to search is not a voluntary consent.

(5) *Burden of proof.* Consent must be shown by clear and convincing evidence. The fact that a person was in custody while granting consent is a factor to be considered in determining the voluntariness of consent, but it does not affect the burden of proof.

that if a command-directed search is mentioned, the different uses of the results of the search must be explained to an accused in order to ensure that the consent is voluntary. Appellant argues that, when a command figure discusses a command-directed urinalysis prior to an accused's consent to a urinalysis and no meaningful explanation of the consequences of command alternatives is given, any resulting consent is mere acquiescence to authority and not truly voluntary.

In *White,* this Court first addressed the situation where an accused was asked to provide a consensual urine sample but asked the question of what would happen if she refused. The commander responded "that he would then 'command direct' it ... [and] 'order her to provide the sample.'" 27 MJ at 264–65. The Court concluded that, under these circumstances, there was "no option" provided to the accused, so the result was "mere acquiescence, not consent." *Id.* at 266.

Subsequently, in *McClain,* this Court addressed a similar situation. Citing *Schneckloth,* 412 U.S. at 218, 93 S.Ct. at 2041, we held:

> If a military member is asked to *consent* to a urinalysis by superior authority, we look at the facts and circumstances surrounding the consent to determine if in fact it is voluntary, and that determination depends largely on how and under what circumstances consent is obtained.

*McClain,* 31 MJ at 133. Then–Judge Cox created a chart to illustrate several common scenarios. In summary, the chart indicated that: "1. Consent obtained without threat of 'command-directed' urinalysis or search warrant" is admissible in a trial by court-martial; "2. Consent obtained with threat of 'command-directed' urinalysis" is not admissible; "3. Consent obtained with threat of potential search warrant or search authorization" is "[p]ossibly admissible, depend[ing] on circumstances;" and "4. Consent obtained with threat of actual search warrant or search authorization" is "[n]ot admissible by virtue of consent; [but is] admissible by virtue of warrant." *McClain,* 31 MJ at 133 (citations omitted).

With regard to the second scenario (consent obtained with the threat of command-directed urinalysis), *White* says that consent can be voluntary if the consequences of the command-directed search, as opposed to a voluntary, consensual search, are explained to the servicemember. 27 MJ at 266. The evidence must be clear that the consent is not "[m]ere submission to the color of authority...." Mil.R.Evid. 314(e)(4). "An official seeking consent from a servicemember may explain that he will attempt to obtain from an appropriate commander or military judge a search authorization based upon probable cause if consent is not forthcoming, but it must be done in an appropriate manner so as to make the resulting consent truly voluntary." *McClain,* 31 MJ at 133; *see also United States v. White,* 979 F.2d 539, 542 (7th Cir.1992); *United States v. Faruolo,* 506 F.2d 490, 493–95 (2d Cir.1974). "Failure to advise an accused" in a meaningful manner "of the critical difference between a consent and a command-directed urinalysis, once the subject is raised, can convert what purports to be consent to mere acquiescence." *United States v. Cook,* 27 MJ 858, 859 (AFCMR 1989). Consent to urinalysis or any other search that is in fact extracted from a servicemember by mere acquiescence to authority renders that consent involuntary and requires suppression of the evidence obtained thereby. *McClain,* 31 MJ at 133; *White,* 27 MJ at 266.

While many circumstances have been included as factors to consider in the analysis of the totality of the circumstances, no single factor has ever been identified as being decisive in finding voluntary consent. *Schneckloth,* 412 U.S. at 226, 93 S.Ct. at 2047; *see also Goudy,* 32 MJ at 90. "[I]t is well settled that no one factor is dispositive of th[e] issue" of voluntary consent. *United States v. Cannon,* 29 MJ 549, 551 (AFCMR 1989); *see Schneckloth,* 412 U.S. at 226–27, 93 S.Ct. at 2047–48. The question of voluntary consent "cannot be resolved by any infallible touchstone ... [T]o place artificial restrictions upon" consent "searches would jeopardize their basic validity." *Schneckloth,* 412 U.S. at 229, 93 S.Ct. at 2048.

■ "Voluntariness" has long been "a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse" consent "is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id.* at 249, 93 S.Ct. at 2059. Voluntariness "cannot be taken literally to mean a 'knowing' choice." *Id.* at 224, 93 S.Ct. at 2046. The mere remark that a commander can authorize a search does not render all subsequent consent involuntary. "A purely factual statement of an intention to follow a legal course of action does not constitute coercion or otherwise vitiate consent to search." *Cannon,* 29 MJ at 553.[7] "Acquiescence to one's circumstances is certainly distinguishable from acquiescence to authority." *Goudy,* 32 MJ at 92.

The nature of a person's subjective understanding underscores the problems with the "bright line" rule sought by appellant. Any person "who was the subject of a search authorized solely by his consent could effectively frustrate the introduction into evidence of the fruits of that search by simply" testifying that he or she in fact did not know the consequences of his or her consent. *Schneckloth,* 412 U.S. at 230, 93 S.Ct. at 2049. The totality-of-the-circumstances analysis allows "searches that are the product of police coercion" to "be filtered out without undermining the continuing validity of consent searches. In sum, there is no reason for us to depart in the area of consent searches, from the traditional definition of 'voluntariness.' " *Id.* at 229, 93 S.Ct. at 2049.

■ Accordingly, this Court does not accept appellant's position that proof of knowledge of the consequences of command alternatives is a necessary prerequisite to demonstrating voluntary consent. We decline to forsake the long-standing totality-of-the-circumstances analysis and, therefore, decline to establish a "bright-line" rule that once a command-directed search is mentioned, a precise explanation of the consequences of command alternatives must be given or else any resulting consent is mere

acquiescence to authority and not truly voluntary.

IV

■ The Court now considers the totality of all the circumstances attending appellant's December 9, 1992, consent to urinalysis. While it is imperative in the military setting that a search can be made under a lawful order, attention must be paid to the rights of servicemembers because of the unique and authoritarian nature of the military environment and the superior/subordinate relationship. We cannot think of any other circumstance where an employee could face a prison term based on the results of a voluntary urinalysis. A totality-of-the-circumstances analysis of voluntariness goes beyond an examination of explicit actions and statements. To find voluntary consent, we must be satisfied by clear and convincing evidence that subtle and implicit pressures did not overwhelm appellant's will.

■ Appellant was not forced or coerced into giving consent to furnish a sample of his urine. After he asked what would happen if he did not consent to a urinalysis, appellant was informed that a command-directed urinalysis could be sought, but that the immediate issue was whether he wanted to consent to a urinalysis. After indicating that a command-directed urinalysis was a possibility, MSgt Isley "merely attempted to steer the conversation back to the question of whether or not appellant would consent and away from the possible consequences of refusal to consent." Unpub. op. at 2–3. It is not automatically coercive or threatening to inform an individual that if consent is refused, a command-directed urinalysis will be ordered.

Overemphasis of the single factor of appellant's lack of knowledge of the specific differences between a consent urinalysis and a command-directed urinalysis would essentially mean abandonment of the totality-of-the-circumstances analysis by allowing one factor to dominate over all the other circumstances. Appellant was not intimidated or misled into giving consent. Unpub. op. at 3. He was

7. Such a statement appears in the third sentence of the consent form (*see* n. 4, *supra* ).

not threatened or made any promises. Appellant acknowledged understanding his rights and expressly granted consent, as evidenced by his reading and signing AF Form 1364, Consent for Search and Seizure. The form which he signed admonished that he did not have to give his consent. Nothing in MSgt Isley's message or demeanor was overbearing, and the evidence at the suppression hearing did not indicate that appellant was an especially submissive person. The totality of the circumstances in this case do not demonstrate mere submission or acquiescence to the color of authority.

Because the decisions of the military judge and the Court of Criminal Appeals that appellant's consent was voluntary are supported by the evidence and are not clearly erroneous, we conclude that the motion to suppress was properly denied.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and GIERKE concur.

SULLIVAN, Judge (dissenting):

I agree with the well-reasoned view of Judge ·Becker, the dissenting judge at the Court of Criminal Appeals. Unpub. op. at 12–18. In my view, the majority opinion of our Court in this case overrules the decisions of this Court in *United States v. White*, 27 MJ 264, 266 (1988), and *United States v. McClain*, 31 MJ 130, 133 (1990). Moreover, it does so without appreciation of the unique military circumstances discussed in those cases and under the rubric of preserving "the long-accepted totality-of-the-circumstances analysis." 45 MJ at 229. I see no conflict between following those cases and applying a totality-of-the-circumstances test. *See Orhorhaghe v. I.N.S.*, 38 F.3d 488, 501 (9th Cir. 1994) (It is well-established that there can be no effective consent to a search or seizure if that consent follows a law enforcement officer's assertion of an independent right to engage in such conduct.) Moreover, I cannot disregard the special circumstances encountered in the military environment when applying such a test. *See generally Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 2563,

41 L.Ed.2d 439 (1974) ("different character of the military community and of the military mission requires a different application of those protections"). I dissent from this impromptu jettisoning of our prior precedent.

Moreover, the majority's reliance on the "refocusing" rationale of the court below and the military judge is not warranted. The appellate court below stated:

Here, the military judge found that MSgt Isley's attempt to refocus the appellant's attention on whether or not he would consent, rather than the consequences of not consenting, "removed the implicit threat that the accused would be ordered to give a sample if he did not give his consent and removed the 'Hobson's choice' of either giving consent or being ordered to give the sample." Taking into account the totality of the circumstances, we do not find that this determination is either clearly erroneous or unsupported by the evidence. The testimony of both MSgt Isley and MSgt Demarini indicate that MSgt Isley simply answered the appellant's question, without much elaboration. He did not state or imply that the commander had or would direct a urinalysis, or use it as an explicit threat. His manner was not overbearing, loud, or threatening. He did not affirmatively mislead the appellant. Indeed, MSgt Isley attempted the course expressly recommended by the Court of Military Appeals in *White* by "meaningfully explain[ing] . . . the consequences of his alternative." 27 MJ at 264.

Unpub. op. at 3. Such a refocusing argument makes no sense here because the implied threat was directed at the very question which the investigator later refocused on. Even under a totality-of-the-circumstances test, an appellate court is not free to ignore reality.

More importantly, the majority's decision today underestimates the coercive nature of rank structure in the military—especially between junior and senior enlisted personnel. When I read this record, I see a 20–year–old airman, a suspected drug user, whose supervisor (a Master Sergeant), drags him by the

ear to appear before his first sergeant. This first sergeant, who is a non-practicing but still insignia-adorned security policeman, said words to the effect that "if [he] didn't give the sample of his own free will, we could always have the commander direct him to do so." Anyone who has served time in the military knows that the atmosphere in the first sergeant's office at that moment was inherently coercive.

Finally, the timing of the first sergeant's threat clearly shows appellant's will was overborne. Once the going got rough, that is, when appellant showed signs of refusing to consent, the first sergeant introduced the idea of a command-directed urinalysis. Moreover, he did so without providing appellant an explanation as to the limitations on the use of such a search. Here is what appellant's supervisor said about the conversation between appellant and the first sergeant:

MJ: Okay, at what point was there a comment about the command could order a sample?

A: Well, it was, to the best of my knowledge, in between the time Airman Radvansky had become resistant to consenting on his own free will and between the time when he signed the form. He—gosh ... he was resistant to signing the form. Sergeant Isley then mentioned that if he did not give a sample of his own free will that we could always have the commander direct him to do so.

These circumstances, not a *per se* rule, show a lack of consent in this case.