UNITED STATES, Appellee,

v.

Jerry W. OWENS, Airman Basic,
U.S. Air Force, Appellant.

No. 98–0133.
Crim.App. No. 32468.

U.S. Court of Appeals for
the Armed Forces.

Argued Nov. 4, 1998.

Decided Aug. 9, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., CRAWFORD, and EFFRON, JJ., joined. SULLIVAN, J., filed an opinion concurring in part and in the result and dissenting in part.

For Appellant: *Captain Michael J. Apol* (argued); *Colonel Douglas H. Kohrt* (on brief); *Lieutenant Colonel Kim L. Sheffield* and *Major Michael C. Barrett*, USAFR.

For Appellee: *Major J. Robert Cantrall* (argued); *Colonel Anthony P. Dattillo* and *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Brenda J. Hollis* and *Lieutenant Colonel Ronald A. Rodgers*.

Amicus Curiae urging reversal: *Marisa Dersey* (Law Student) (argued); *David N. Patton IV*, *Sherry Boston* (Law Student), and *Keith Halpern* (Law Student) (on brief)—For Emory University School of Law.

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of four specifications of damaging private property, and five specifications of larceny, in violation of Articles 109 and 121, Uniform Code of Military Justice, 10 USC §§ 909 and 921, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, total forfeitures, and confinement for 2 years and 9 months. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

This Court granted review[1] of the following issue:

> WHETHER THE MILITARY JUDGE ERRED AS A MATTER OF LAW WHEN HE DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE.

For the reasons set out below, we hold that the military judge did not abuse his discretion.

## Factual Background

On May 1, 1996, the Security Police at Altus Air Force Base, Oklahoma, received a report that property had been stolen from five vehicles in a dormitory parking lot. In the late afternoon of May 1, appellant called a Ford dealership in Altus, Oklahoma, and requested emergency roadside services. The ignition switch in appellant's Ford Escort was stuck, so it could not be turned on or off. Kenneth Aungst, a repair technician and tow truck operator, towed appellant's vehicle to the dealership.

Mr. Aungst became suspicious because he saw a large quantity of stereo components in appellant's automobile with the wires cut off instead of being disconnected. He called the Altus Police Department. Eventually, stolen stereo equipment was seized from appellant's automobile and dormitory room, giving rise to the charges of larceny and damaging private property.

---

1. We heard oral argument in this case at Emory University School of Law, Atlanta, Georgia, as part of the Court's Project Outreach, without objection from the parties involved. *See* 38 MJ 136, 137 n. 1.

At trial, defense counsel made a timely motion to suppress the seized property. After a lengthy hearing on the motion, the military judge made extensive findings of fact and conclusions of law and denied the motion to suppress. The parties do not dispute the military judge's findings concerning historical facts, which are supported by the record. Accordingly, we resolve the granted issue on the basis of the facts found by the military judge. He made the following findings of fact:

First, the accused called for a tow truck when his car had problems on 1 May 1996. Mr. Aungst towed the car to the local Ford dealer where it was decided that the ignition would be replaced, as well as both door locks and the hatch lock. The work could not be done that day, as it was near closing, and the parts would not be available until the next day. The accused was provided a loaner vehicle to use. He was asked if he wanted to remove anything from his car overnight; he said no, and left.

Second, the following morning, Mr. Aungst was working next to the accused's car which had both doors and the hatch open as it was being worked on. Mr. Aungst noticed a far above normal amount of stereo components in the car; it appeared to be expensive equipment and had obviously cut wiring. The car itself had an installed after-market radio. Mr. Aungst, as an experienced tow truck driver, had seen a lot of vehicles which had been vandalized and impounded, and this equipment in the car, with cut wires, raised concerns to him. Mr. Aungst told his supervisor and suggested the police be called. Mr. Aungst did not enter the vehicle to look at the equipment, nor did he touch it.

Third, Officer Dwayne D. Mills of the Altus Police Department was the officer who responded to the call from the Ford dealer. He responded at about 1030 hours on 2 May 1996. After meeting with Mr. Aungst, he went over to the open car and observed a large speaker and several pieces of stereo equipment in the trunk or hatch area of the car, on the back seat, and on the rear floorboards on both sides of the car. He observed that wires on the equipment had been cut very close to the back of the units. Officer Mills was aware that there had been some car burglaries around town just a few days earlier. He got a notepad, picked up six or eight different pieces of equipment, and wrote down brand names and serial numbers. Officer Mills returned to the Altus Police and was later advised that the Security Police at Altus Air Force Base had information about some car burglaries on base. He called SSgt [Staff Sergeant] Bovara or SrA [Senior Airman] Hill and discussed the matter. He was told that the items he had seen could be the items from the base.

Fourth, the two Security Policemen, Bovara and Hill, went to the Altus Police Department and met Officer Mills. They all went to the Ford dealer where they looked into the accused's car. What they saw was enough to convince them that the accused was involved in the base car burglaries. The brand name Fosgate was visible on at least one piece of equipment, and it was an unusual enough name to convince the Security Police that the accused was involved.

Fifth, the accused's First Sergeant was briefed and asked to bring the accused to the Security Police Building, where he was met by the two SP Investigators and Officer Mills. The accused was told by SSgt Bovara that they were investigating the larceny of stereo equipment from the base; that they had information that some of the stuff was in his car at the Ford dealer; that they had gone down and identified some of the stuff as being from the base thefts, and that the accused was a suspect. The accused was told he would not then be asked any questions; that the police wanted to look at the stuff in his car; and that they would like his consent to a search of the car in order to positively identify the stuff. The accused said he was willing to do that. An Air Force Form 1364 was completed (Appellate Exhibit IX); SSgt Bovara filled in the handwritten portion; he provided the completed form to the accused and read from a blank form while

the accused read along on the completed form. At the end of reading the form, the accused was asked if he understood and he said yes. He was asked if he knew he could limit the search and he said yes. He was asked if he knew he could terminate the search and he said yes. The accused signed Appellate Exhibit IX; actually, he signed it twice, as he missed the signature block the first time; and this was pointed out by SSgt Bovara. The consent form covered the accused's car and his dormitory room. There being no evidence to the contrary, I infer the accused is a high school graduate and can read and understand the consent form.

Sixth, the two Security Policemen, Officer Mills, the accused, the First Sergeant, and another Master Sergeant, went to the Ford dealer's impound lot. The car had been moved from inside the garage to the outdoor secured lot and locked. The two SPs began to inventory the contents of the car with Officer Mills observing. Twelve minutes and about ten items into the search, SSgt Bovara said words to the effect of, "you know, you can terminate this at any time." SSgt Bovara claims it was just an off-the-cuff remark, made on a hot day, basically joking around. He never expected the accused to say he wanted to terminate the search. The accused did say he wanted to terminate the search. The Security Policeman [sic] stopped immediately when he said that.

Seventh, SSgt Bovara told Officer Mills that he had to give the case back to him because they were downtown and the accused had withdrawn his consent to their search. Officer Mills immediately advised the accused that it was his case; that he would seize the car and try to get a search warrant in order to recover the rest of the items from the car. Although Officer Mills does not recall, both SSgt Bovara and SrA Hill related that Officer Mills told the accused something to the effect that the car had been used in a felony; that it could be seized and possibly forfeited. The accused asked what his options were. Officer Mills explained that if the accused consented, there would be no need to seize the vehicle

to ensure recovery of the evidence. The accused verbally consented and then signed Appellate Exhibit VIII, the consent form prepared by Officer Mills. Officer Mills completed the inventory of the items in the car and took them into his custody. These items were later placed in the Altus Police Department evidence locker and subsequently turned over to the OSI.

Eighth, upon completion of the seizure of property from the car, the Security Police, Officer Mills, and the accused all returned to the Security Police Building on Altus Air Force Base. SrA Hill apprised the legal office of the status of the case and asked for an opinion as to probable cause to search the accused's dorm room. Given a favorable reading by legal, he contacted Colonel Dickensheets and received a verbal authorization to search the accused's dorm room. SrA Hill provided the information found in page 1 of Appellate Exhibit XIII. That affidavit was provided to Colonel Dickensheets on 3 May 1996, and the colonel confirmed his verbal authorization by signing Appellate Exhibit XII on 3 May 1996. Property was seized from the accused's room pursuant to the search authorization.

Ninth, the accused's roommate, Airman Sandefur, was contacted and told to report to his room. He consented to a search of his portion of the room and his property, and he volunteered that he had a radar detector in his car which he had received from the accused. He was trying it out and was to buy it from the accused for $20.00 if he wanted it. Airman Sandefur gave the radar detector to the Security Police.

Tenth, during the course of the 2 May 1996 search of the accused's room, a portable CD player was observed in the room. It was not seized because there was no report that a CD player had been stolen. The next day, one of the victims of the 1 May 1996 car burglaries reported that she had had a portable CD player stolen. Armed with this information, SrA Hill prepared an affidavit (Appellate Exhibit XIII, Page 3,) and obtained a search authorization

from Colonel Dickensheets, Appellate Exhibit XI. The CD player was found in the accused's dormitory room and seized.

Eleventh, the Ford dealership called on 2 May 1996, concerning the return of their loaner car, which the accused had. The accused gave the key to the loaner to Officer Mills. A tow truck arrived to get the loaner. It could not be loaded from where it was parked, so Officer Mills drove it over to the tow truck. He observed a helmet bag in the car, as well as some cassette tapes. Believing that these were the accused's items, rather than things which belonged with the car, Officer Mills looked in the bag and discovered a receipt in the name of one of the 1 May 1996 car burglary victims. He took the bag out of the loaner car and gave it to the investigators. SSgt Bovara believed he was getting the accused's property, which had been left in the loaner. The accused by then had been processed for entry into pretrial confinement. SSgt Bovara did not suspect the accused of any offense with regard to the tapes and the helmet bag; his intent was to inventory the items and put them in safe keeping for the accused. When he discovered the receipt inside, the items became evidence.

The document referred to in the military judge's eighth finding of fact recited that theft of property from five automobiles had been reported on May 1, 1996. The document recited that the Security Police viewed the items in plain view in appellant's automobile and found "possible matches" with property that had been reported as stolen. The document also recited that the search of appellant's automobile "revealed property that matched many items reported as stolen on 01 May 96," but the document did not specify whether the "property" was the items discovered by SSgt Bovara and SSgt Hill or the "property" discovered by Officer Mills. Because more property had been reported stolen than was recovered from appellant's automobile, the Security Police requested command authorization to search his dormitory room and his assigned locker at his place of duty.

The military judge ruled that Mr. Aungst's observation of the equipment in appellant's car was a private action and thus was not an illegal search. He ruled that Mr. Aungst had authority to allow Officer Mills to examine and "inventory the contents of the car." He ruled that Officer Mills had probable cause to search the car without a warrant, under the "automobile exception" to the warrant requirement under the Fourth Amendment.

The military judge further ruled that SSgt Bovara and SrA Hill did not conduct an illegal search by looking into appellant's automobile. He ruled that there was clear and convincing evidence that appellant consented to the search of his automobile. Accordingly, he ruled that items seized by the Security Police before appellant terminated his consent were admissible.

The military judge ruled that the purported consent obtained by Officer Mills was "mere acquiescence to the situation, rather than a voluntary consent." However, the military judge ruled that the evidence would have been inevitably discovered, because Officer Mills had probable cause and "would have obtained a warrant" and seized the property. Accordingly, he ruled that the items seized by Officer Mills were admissible.

The military judge ruled that the two authorizations to search appellant's dormitory room were "properly sought and granted." He likewise ruled "that the radar detector surrendered by" appellant's roommate was admissible.

Finally, the military judge ruled that the helmet bag, cassette tapes, and receipt were lawfully taken from the loaner car, because they were acquired "in an inventory situation," where the accused was "about to go into pretrial confinement" and the "loaner car was being retrieved by the Ford dealership."

### Discussion

Appellant contends that Officer Mills' initial examination of the stereo equipment in his automobile was an illegal search; that he did not consent to the search of his automobile; that the doctrine of inevitable discovery

was incorrectly applied by the military judge; and that the search of his dormitory room was tainted by the unlawful searches of his automobile. We resolve all these issues against appellant.

■ We review a military judge's evidentiary ruling for abuse of discretion. The military judge's "[f]indings of fact will not be overturned unless they are clearly erroneous or unsupported by the record." We review conclusions of law *de novo*. *United States v. Reister*, 44 MJ 409, 413 (1996). As we said in *United States v. Sullivan*, 42 MJ 360, 363 (1995), "We will reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law."

■ Although the Government argues that Mr. Aungst had authority to consent to Officer Mills' initial examination of appellant's car, we do not resolve the issue on that basis. It is not a search for Officer Mills to look into appellant's automobile through a window or open door. *See Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)(plurality opinion). However, when Officer Mills reached into the automobile to examine the serial numbers of some of the items, that action arguably was a search. If Officer Mills had probable cause, no warrant was required because the "automobile exception," *Coolidge v. New Hampshire*, 403 U.S. 443, 462, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), to the warrant requirement was applicable. Mil.R.Evid. 315(g)(3), Manual for Courts–Martial, United States (1995 ed.)[2] provides that a search warrant or search authorization is not required when "[a]n operable vehicle is to be searched, except in the circumstances where a search warrant or authorization is required by the Constitution of the United States, this Manual, or these rules...." This rule is based on the Supreme Court's recognition of the "automobile exception" in *United States v. Chadwick*, 433 U.S. 1, 12, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *see South Dakota v. Opperman*, 428 U.S. 364, 367–68, 96 S.Ct. 3092, 49 L.Ed.2d

1000 (1976); *Texas v. White*, 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *see also Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Drafters' Analysis of Mil.R.Evid. 315(g)(3), Manual, *supra* at A22–30.

There are two constitutional bases for the automobile exception: (1) mobility, and (2) reduced expectation of privacy. *See California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Some federal circuits hold that the automobile exception applies even if the automobile is not operable, because the reduced expectation of privacy is sufficient to eliminate the requirement for a warrant. *See United States v. Matthews*, 32 F.3d 294, 299 (7th Cir.1994). Other federal circuits have held that law enforcement officials need not determine "the actual functional capability of a vehicle" when the alleged immobility is not apparent. *See United States v. Hatley*, 15 F.3d 856, 859 (9th Cir.1994); *United States v. Hepperle*, 810 F.2d 836, 840 (8th Cir.), *cert. denied*, 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987). Under either view, the automobile exception was applicable to this case, because there is nothing in the record showing that Officer Mills knew that appellant's automobile was inoperable, and Officer Mills was not required to ascertain the actual functional capability of the vehicle. Accordingly, we hold that the military judge correctly ruled that Officer Mills did not need a warrant in order to lawfully reach into appellant's automobile to examine the serial numbers of some of the items.

On the question of probable cause, we hold that the military judge correctly concluded that Officer Mills had probable cause, based on his knowledge of recent car burglaries and the presence of a large quantity of stereo equipment in appellant's automobile with the wires cut short instead of disconnected. Accordingly, we hold that the military judge did not err when he concluded that Officer Mills' initial search of appellant's automobile was lawful under the automobile exception to the

---

**2.** All Manual provisions are cited to the version applicable at trial. The 1998 version is un-

changed, unless otherwise indicated.

Fourth Amendment. *See* Mil.R.Evid. 315g(4) (warrant not required by Rules of Evidence if not required by Constitution).

When SSgt Bovara and SrA Hill first looked at the contents of appellant's automobile through the open doors and hatch, there was no search. *See Texas v. Brown, supra.* Their limited search of appellant's automobile, conducted later the same day, was pursuant to his written consent and was terminated when he withdrew his consent.

Mil.R.Evid. 314(e)(4) addresses consent as follows:

> To be valid, consent must be given voluntarily. Voluntariness is a question to be determined from all the circumstances. Although a person's knowledge of the right to refuse to give consent is a factor to be considered in determining voluntariness, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Mere submission to the color of authority of personnel performing law enforcement duties or acquiescence in an announced or indicated purpose to search is not a voluntary consent.

Under Mil.R.Evid. 314(e)(5), the prosecution had the burden of showing consent "by clear and convincing evidence." Whether there was a voluntary consent is determined by "the totality of all the circumstances." *United States v. Radvansky,* 45 MJ 226, 229 (1996), quoting *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

 On appellate review, this Court "must be satisfied by clear and convincing evidence that subtle and implicit pressures did not overwhelm appellant's will." 45 MJ at 231. Our standard of review is deferential. This Court will not overturn a military judge's determination that a person has voluntarily consented to a search "unless it is unsupported by the evidence or clearly erroneous." *Id.* at 229, quoting *United States v. Kosek,* 41 MJ 60, 64 (CMA 1994). The record amply supports the military judge's determination that appellant consented to the search of his automobile by SSgt Bovara and SrA Hill. Accordingly, we hold that the military judge did not err by admitting the items seized from appellant's automobile by SSgt Bovara and SrA Hill.

In contrast to the consent obtained by SSgt Bovara and SrA Hill, the military judge ruled that the purported consent obtained by Officer Mills was not a voluntary consent but mere acquiescence to authority. *See Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *cf. Radvansky,* 45 MJ at 231. Because the Government does not contest that ruling, we will not review it. Because the items seized by Officer Mills were not offered in evidence, we will review only the question whether the search conducted by Officer Mills tainted the probable-cause determination for the subsequent search of appellant's dormitory room.

The military judge ruled that the remaining items in appellant's automobile would have been inevitably discovered after he revoked his consent. The concept of "inevitable discovery" is recognized in Mil.R.Evid. 311(b)(2), which is based on the Supreme Court's recognition of the "inevitable discovery exception" to the exclusionary rule in *Nix v. Williams,* 467 U.S. 431, 441, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). *See* Drafters' Analysis of Mil.R.Evid. 311(b)(2), Manual, *supra* at A22–18; *see also United States v. Kozak,* 12 MJ 389, 391–94 (CMA 1982).

 When Officer Mills took over the search, he had even stronger probable cause than he did when he first examined appellant's automobile. Both the Altus Police Department and the Altus Air Force Base Security Police had open investigations. Officer Mills knew that there had been a series of car burglaries, both in the town of Altus and on Altus Air Force Base. Once the ten or twelve items removed by SSgt Bovara and SrA Hill were identified as stolen property, the probability that the remaining items were also stolen would have been much higher. There is no reasonable likelihood that Officer Mills would have abandoned his efforts to search the automobile at that point. When the routine procedures of a law enforcement agency would inevitably find the same evidence, the rule of inevitable discov-

ery applies even in the absence of a prior or parallel investigation. *See United States v. Kennedy,* 61 F.3d 494 (6th Cir.1995), *cert. denied,* 517 U.S. 1119, 116 S.Ct. 1351, 134 L.Ed.2d 520 (1996); *United States v. Seals,* 987 F.2d 1102 (5th Cir.), *cert. denied,* 510 U.S. 853, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993); *United States v. Perea,* 986 F.2d 633 (2d Cir.1993). *But cf. United States v. Owens,* 782 F.2d 146, 152–53 (10th Cir.1986); *United States v. Satterfield,* 743 F.2d 827, 846 (11th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2362, 86 L.Ed.2d 262 (1985). We hold that the military judge did not abuse his discretion by concluding that the evidence would have been inevitably discovered. Thus, we need not decide whether Officer Mills could have lawfully searched the vehicle under the automobile exception or seized the remaining items from the vehicle in preparation for impounding it. *See Opperman,* 428 U.S. at 368, 96 S.Ct. 3092 (recognizing power of police to inventory property in an impounded vehicle). Because the items seized by SSgt Bovara, SrA Hill, and Officer Mills were admissible, we hold that the searches of appellant's automobile did not taint the commander's authorization to search appellant's dormitory room.

■ We turn next to the question whether the commander had probable cause to authorize the search of appellant's dormitory room. Mil.R.Evid. 315(f)(2) provides: "Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be search[ed]." When a commander is asked to authorize a search, the question is "whether, given all the circumstances set forth in the affidavit before him, ... a fair probability" exists that the suspected evidence will be found in the place to be searched. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). When an appellate court reviews the decision to authorize a search, the question is whether the commander had a " 'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Figueroa,* 35 MJ 54, 56 (CMA 1992), quoting *Gates, supra* at 238–39, 103 S.Ct. 2317.

We hold that the military judge did not err by upholding the commander's probable-cause determination. The affidavit of SrA Hill recited that there had been larcenies from five vehicles parked in a dormitory parking lot, that appellant had consented to a search of his vehicle, that before appellant withdrew his consent property was seized that matched items reported as stolen, and that more property had been reported as stolen than had been recovered from appellant's automobile. Reasoning that stolen property not stored in the automobile was likely to be stored in the dormitory room, SrA Hill requested and received authorization to search. As was the case in *Figueroa, supra* at 56, the commander correctly concluded that the two "most logical place[s] for appellant to store" contraband were his quarters and his automobile. Any stolen property not in the automobile was likely to be in the dormitory.

While in appellant's dormitory room, the Security Police observed a compact disc (CD) player, but they did not seize it because no CD players had yet been reported as stolen. The next day, one of the victims reported that a CD player had been stolen from her vehicle. SrA Hill requested a second authorization to search appellant's room based on this additional information. It was granted, and the CD player was seized. As with the first search authorization, we hold that the commander had a substantial basis for concluding that there was probable cause to search appellant's room for a stolen CD player.

Finally, with respect to the radar detector voluntarily surrendered by appellant's roommate, we hold that appellant's Fourth Amendment rights were not violated. The roommate voluntarily surrendered the radar detector. Appellant had no reasonable expectation of privacy in his roommate's portion of the room or his roommate's property. *See* Mil.R.Evid. 311(a)(2); *United States v. Foust,* 17 MJ 85, 87 (CMA 1983).

*Decision*

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in part and in the result and dissenting in part):

Duty requires me to write separately in this case.*

I agree with the result reached by the majority, but I cannot find, as they did, that the Altus, Oklahoma, Police Department's Officer Mills had probable cause to search appellant's car at the Ford dealership. At the time Officer Mills entered appellant's car to move the stereo components so he could copy down the serial numbers, all Mills knew was that there had been some recent car burglaries in the city of Altus (this is probably true of every major city in America on every day in recent times) and that appellant's car had stereo equipment in it with "cut wires." The Supreme Court has held that moving items to obtain serial numbers is a search. *Arizona v. Hicks*, 480 U.S. 321, 324, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). However, there must be probable cause to justify a warrantless search of an automobile. *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), and *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157,

72 L.Ed.2d 572 (1982); *cf. United States v. Perry*, 925 F.2d 1077 (8th Cir.1991).

In my view, the majority is not only wrong on the probable cause involving the Mills' search, but such a ruling is a dangerous one for the Fourth Amendment. Such a ruling would allow Officer Mills to search *any* car in Altus, Oklahoma, where he saw some stereo equipment with cut wires *or* any other objects that he thought could have *possibly* been stolen in recent car burglaries. Mills should not have that broad authority to search cars. The majority's ruling in this case lowers the standard from probable cause to "possible cause." *See State v. Wilson*, 279 Md. 189, 367 A.2d 1223 (1977); *Cleckley v. State*, 42 Md.App. 80, 399 A.2d 903 (1979).

Nevertheless, I agree with the majority that the conviction here can be affirmed. Initially, I note that there was no evidence seized in Mills' search that was used in the prosecution of appellant. Moreover, the evidence in the car was admissible against appellant because it followed the untainted "plain viewing" of the evidence by the military investigators and the subsequent search based on the voluntary consent of appellant.

---

* There are two opposite views on writing separate opinions at an appellate court. At one extreme is the school grounded on the views of people like Thomas Jefferson, who strongly felt that each appellate judge should write separate or seriatim opinions. Letter to Justice Johnson, October 27, 1822, 12 *The Works of Thomas Jefferson* 246–252 (Paul L. Ford, ed.). Of the Jefferson school were advocates like Judge Brockenbrough, who felt that "the people had surely a right to expect that each judge should assign his own reasons for the vote which he gave." Jean Edward Smith, *John Marshall* 448 (Henry Holt and Company, New York). Another extreme view I have observed is in the remarks of a Federal Appeals Court judge who once said he seldom dissented because it made no difference and it may offend the other two judges of the panel on which he may be sitting.

I take somewhat of a middle ground and dissent or write separately when I feel it is necessary or appropriate to add my reasons to my vote. As Judge Benjamin N. Cardozo said prior to his elevation to the Supreme Court, sometimes a dissent or a separate opinion in the future becomes the law or the controlling point in the law. An example of Cardozo's idea can be found in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). It is Justice Harlan's concurring opinion in *Katz* at 360, 88 S.Ct. 507 that now dominates the area of the law governing the "expectation of privacy" aspect of the Fourth Amendment. *See Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991) (does not even identify the separate opinion, it is so firmly accepted).