# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

**No. 201600221**

———————————————

## UNITED STATES OF AMERICA
Appellee

v.

## LANORRIS D. DANIELS
Hospital Corpsman Second Class (E-5), U.S. Navy
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Charles N. Purnell, JAGC, USN.
Convening Authority: Commander, Navy Region Mid-Atlantic, Norfolk, VA.
Staff Judge Advocate's Recommendation: Captain Andrew R. House, JAGC, USN.
For Appellant: Lieutenant Commander Derek C. Hampton, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC, USN; Lieutenant Robert J. Miller, JAGC, USN.

———————————————

Decided 13 April 2017

———————————————

Before GLASER-ALLEN, MARKS, AND FULTON, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

GLASER-ALLEN, Chief Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of aggravated sexual assault of a child, indecent liberties with a child, and sodomy, in violation of Articles 120 and

125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920 and 925 . The military judge sentenced the appellant to 118 months' confinement, reduction to pay grade E-1, and a dishonorable discharge. The convening authority approved the sentence and, pursuant to a pretrial agreement (PTA), suspended all confinement in excess of four years.

In two assignments of error (AOE), the appellant asserts the military judge erred: (1) by admitting portions of the victim's unsworn statement and (2) by admitting the same allegedly improper victim evidence as rebuttal evidence before the appellant had presented any matters in sentencing. After carefully considering the pleadings and the record of trial, we find no error materially prejudicial to the substantial rights of the appellant, and affirm the findings and sentence. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

In May 2008, 13-year-old RR moved to live with the appellant and his wife, escaping physically abusive and traumatic living conditions in Chicago. RR was the appellant's wife's younger sister. A few months after RR's arrival in her new home, the appellant began having sex with her. Over the next five years, the appellant regularly had oral and vaginal sexual intercourse with RR, often initiating sex in her bedroom before he went to work in the morning. When the appellant was deployed, this inappropriate conduct continued virtually, including his request that RR email him a sexually explicit video of her masturbating.

In 2013, RR told her mother about the ongoing sexual conduct. RR's mother confronted the appellant's wife, who soon forced RR to leave the appellant's family home. RR was hurt and surprised by her sister's reaction, which not only cost her a home but also valued relationships with her sister, niece, and nephew.

At trial during the presentencing phase, RR provided a verbal unsworn statement, pursuant to RULE FOR COURT-MARTIAL (R.C.M.) 1001A, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.) that reiterated part of her previously provided, written statement:

> I took care of my niece and nephew since they were little. I love them like they are my children. My sister doesn't [let] me see them anymore. I've lost my sister, my niece and my nephew because of you, Lanorris. You took advantage of the terrible situation I was in. I only had two choices, go back to Chicago or ignore what you were doing to me.
>
> I will live with what you've done to me for the rest of my life. For the last three years, you've lied and told everyone that this didn't happen. And now you get to pretend to be a man and

take responsibility. You would never have taken responsibility. You were ready to let people call me a liar and be ashamed [sic] upon for the rest of my life. I was labeled as a disgrace. You taught me how to read at the same time you molested me. I hate you, but I'm forced to think about you every day. I'm still confused every day how to think about what has happened to me. But I'm [a] survivor. I'm empowered by the horrors of what I have to go through every day. But I'm going to get through this.[1]

Trial defense counsel objected to those portions of the statement that asserted that the appellant had not taken responsibility for his acts. The military judge overruled the objection.

## II. DISCUSSION

### A. Admissibility of the victim's unsworn statement

The appellant alleges the military judge erred in admitting that portion of the victim's written and verbal unsworn statements related to the appellant's "manhood and accusing [the] Appellant of not having taken responsibility for his actions" as sentencing evidence because it neither met the definition of victim impact, as defined in R.C.M. 1001A, , nor was it directly related to his offenses, as required for aggravation evidence under R.C.M. 1001(b)(4).[2]

We review a military judge's admission or exclusion of evidence, including sentencing evidence, for an abuse of discretion.[3] *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). The military judge's findings of fact receive deference and will only be overturned if they are clearly erroneous; we review conclusions of law *de novo. United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999) (citing *United States v. Reister*, 44 M.J. 409, 413 (C.A.A.F. 1996)).

Article 6b, UCMJ, delineates the rights of victims and mirrors those afforded under the Crime Victims' Rights Act (CVRA), 18 U.S.C § 3771 . As noted by our sister court in *United States v. Wareham,* consistent with the intent of Congress, federal courts have "interpreted these rights to include giving statements at sentencing hearings without being placed under oath."

---

[1] Prosecution Exhibit 4 at 2; Record at 80-81.

[2] Appellant's Brief of 18 Aug 2016 at 4.

[3] Although the appellee notes that the standard may properly be "plain error," given the vagueness of the trial defense counsel's (TDC) trial objections and the more specific objection raised on appeal, Appellee's Brief of 26 Sep 2016 at 15-17, we need not address this issue, as the appellant's argument fails under either standard.

No. ACM 38820, 2016 CCA LEXIS 609, at *14 unpublished op., (A.F. Ct. Crim. App. 20 Oct 2016).[4]

R.C.M. 1001A[5] implements a victim's right to be reasonably heard, giving a victim the right to make a sworn or unsworn statement during sentencing in a non-capital case. R.C.M. 1001A(b)(4)(B). The President has broadly defined the scope of this victim impact testimony as including "any financial, social, psychological, or medical impact on the victim directly relating to or arising from the offense of which the accused has been found guilty." R.C.M. 1001A(b)(2).

The government may present evidence of "aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty," to include "social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused[.]" R.C.M. 1001(b)(4). "The phrase 'directly relating to or resulting from the offenses' imposes a 'higher standard' than 'mere relevance.'" *United States v. Rust*, 41 M.J. 472, 478 (C.A.A.F. 1995) (quoting *United States v. Gordon*, 31 M.J. 30, 36 (C.M.A. 1990)).

As noted by the appellee, the language in R.C.M. 1001A, "directly relating to or *arising* from the offense," makes victim impact evidence arguably broader and more encompassing than government aggravation evidence, defined as "directly related to or *resulting* from," under R.C.M. 1001(b)(4) (emphasis added). And unlike government sentencing evidence, R.C.M. 1001A evidence is not considered aggravation evidence, and the victim is not considered a witness for purposes of Article 42(b), UCMJ. R.C.M. 1001A(a). The evidence presented under R.C.M. 1001A is considered either crime victim impact or mitigation evidence and is premised solely upon a victim's right to be reasonably heard. R.C.M. 1001A(a), (b), and (c). Finally, this right "is

---

[4] *See* 150 Cong. Rec. S10911 (October 9, 2004) (statement of Sen. Jon Kyl) ("When a victim invokes this right during plea and sentencing proceedings, it is intended that he or she be allowed to provide all three types of victim impact: the character of the victim, the impact of the crime on the victim, the victim's family and the community, and sentencing recommendations."). This right was intended essentially as "victim allocution" under the CVRA. *United States v. Degenhardt*, 405 F. Supp. 2d 1341, 1348 (D. Utah 2005).

*See also United States v. Rowe*, No. ACM 38880, 2017 CCA LEXIS 89, at *6-9, unpublished op. (A.F. Ct. Crim. App. 8 Feb 2017); *United States v. Parr*, No. ACM 38878, 2017 CCA LEXIS 86, at *3-9, unpublished op. (A.F. Ct. Crim. App. 7 Feb 2017).

[5] As amended by Exec. Order 13,696, 80 Fed. Reg. 35,783, 35,807-08 (Jun. 17, 2015).

independent of whether the victim testified during findings or is called to testify under R.C.M. 1001." R.C.M. 1001A(a).

The appellant argues that the military judge erred by admitting the victim's unsworn statement because it did not meet the definition of "victim impact" under R.C.M. 1001A and therefore was improper sentencing evidence. He also argues that the admissibility analysis should focus on the standards set out in R.C.M. 1001(b)(4) for aggravation evidence because "[a] victim's unsworn statement during the presentencing phase of the court-martial is, for all intents and purposes, evidence in aggravation."[6] We disagree.

The appellant pleaded guilty to aggravated sexual assault, indecent liberties, and sodomy of RR, whose statement was admitted over the appellant's objection in aggravation and as crime victim evidence under R.C.M. 1001A.[7] In admitting the victim's written and verbal unsworn statements, the military judge ruled:

> And I will note, for the record, that I'm considering this an unsworn statement and not as a sworn statement and will differentiate accordingly. But this statement, I find, falls within the meaning of [R.C.M. 1001A], has properly been provided to the defense and the court prior to the victim making her unsworn statement. I think she has a right under Article 6(b) to make an unsworn vice a sworn statement and if that's her election, I'm going to consider this evidence. But I can assure you, that I can parse out what is some, a little bit of information, about the victim to place these offenses in context, and what's aggravation that directly arises out of this offense.[8]

This evidence was both directly related to the offenses and presented victim psychological impact arising from the offenses of which the appellant was found guilty. Consequently, we conclude the victim impact evidence was directly related to the appellant's crimes *and* properly subject to RR's right to be reasonably heard—thus, it was admissible under both R.C.M. 1001(b)(4)

---

[6] Appellant's Brief at 6.

[7] The TDC objected vaguely at trial, arguing that RR's unsworn statement was " not related to the accused" and "[t]hen the last paragraph, it makes reference to him not taking responsibility, things like that. He's here pleading guilty. He's taken responsibility." Record at 67.

[8] *Id.* at 70.

as prosecution aggravation evidence and under R.C.M. 1001A(b)(1) and (2) as crime victim impact evidence.[9]

As noted above, evidence admitted under R.C.M. 1001A is not considered aggravation evidence, but rather crime victim impact or mitigation evidence, and is premised solely upon a victim's right to be reasonably heard. Here the evidence highlighted the psychological trauma RR went through as she dealt with removal from her sister's home and family connection, as well as the painful skepticism with which her family viewed the allegations given the appellant's initial denials. *See* R.C.M. 1001(b)(4) and R.C.M. 1001A(b)(2) (stating that both aggravation evidence and the right to be reasonably heard include evidence of psychological impact on the victim).

## B. Improper rebuttal evidence

In his second AOE, the appellant contends the military judge procedurally erred by allowing RR's testimony as rebuttal evidence before the appellant had presented any matters in presentencing, and that by doing so, he was essentially compelled to provide evidence because the ruling anticipated his unsworn statement.[10] We disagree.

The judge ruled in relevant part:

> As to your last objection with respect to your client having taken responsibility, I'm sure you're going to provide evidence of that in the defense case and you are free to argue that. I think this is perhaps a bit anticipatory, but I believe it's going to likely be appropriate rebuttal and present this from the victim's point of view. And rather than have the victim come up and testify twice, in the interest of judicial economy and efficiency and considering the fact that, I think this provides some information about a counter[]point of view, I'm going to admit that.[11]

---

[9] As noted by the appellee, pursuant to paragraph 8(d) of the PTA, the appellant waived any right to object to aggravation evidence or unsworn victim testimony under R.C.M. 1001(b)(4). Though we resolve the case on other grounds, we note the waiver's key relevance to an R.C.M. 1001(b)(4) admissibility analysis involving unsworn aggravation evidence.

[10] This claim of improper rebuttal argument and supposed resulting compulsion to testify is raised for the first time on appeal. This argument is misleading because the appellant's unsworn statement did not challenge RR's accusations regarding his prior denials of the sexual misconduct.

[11] Record at 70.

R.C.M. 1001A delinates not only the substance of victims' statements but also how they exercise their rights procedurally at courts-martial. A victim's right to be reasonably heard is "independent of whether the victim testified during findings or is called to testify under R.C.M. 1001." R.C.M. 1001A(a). Indeed, R.C.M. 1001A(a) explains that when a victim is exercising "the right to be reasonably heard, the victim *shall be called by the court-martial"* (emphasis added). Additionally, R.C.M. 1001A(e) notes a victim's "unsworn statement may be oral, written, or both[,]" requires that it be presented "[*a*]*fter the announcement of findings,"* and permits the TC and TDC to "rebut any statements of facts therein." (Emphasis added).

Thus, R.C.M. 1001A(e)(1) specifically permitted RR to present her unsworn statement after findings and did not require the statement to be delayed until after the defense's sentencing case. Notably, R.C.M. 1001A(e) specifically permits the prosecution or defense to rebut any statements of fact in the victim's unsworn statement. Similarly, the military judge was well within his discretion, in the "interest of judicial economy and efficiency,"[12] to allow RR to speak about the psychological impact of both the appellant's prior denials and ultimate admission of guilt once and prior to the defense case. *See* R.C.M. 801(a)(3), *Discussion* (noting that the military judge may determine "when, and in what order . . . witnesses may testify," and "should prevent unneccesary waste of time and promote the ascertainment of truth").

Here, despite the appellant's contention, RR was not preemptively rebutting the appellant's unsworn statement, but simply arguing the weight his pleas should be given in light of his previous denials and the significant impact they had upon her. Given the circumstances, we find it unlikely that the military judge was improperly swayed by the timing of RR's unsworn statements—and we find it unlikely that he would have been, regardless of whether it was provided all at once, as it was here, or provided piecemeal through an initial statement and later rebuttal statement.

Accordingly, we find the military judge did not abuse his discretion in allowing the victim to address the court once instead of requiring an initial unsworn statement followed by a later victim rebuttal.

Given the intent of R.C.M. 1001A, if the victim desires to be reasonably heard after findings, the military judge should decide, with the parties' input, when that best fits into the sentencing phase. We suggest the military judge make the record clear that when a victim is heard pursuant to R.C.M. 1001A, the court, rather than one of the parties, calls the victim. Likewise, calling the victim first, before the government or defense begins presentencing, may often be a best practice. Procedurally, this keeps the record clear and easily

---

[12] *Id.*

provides for appropriate rebuttal from the government or defense as contemplated in R.C.M. 1001A(e).

Finally, military judges should also consider how to best mark and handle evidence admitted through R.C.M. 1001A. In most cases, a crime victim provides impact evidence under the rule via an unsworn verbal statement after being called by the court. Recognizing there is no specific guidance in R.C.M. 1001A, when a victim provides an unsworn written statement, we suggest handling it the same way as a stipulation of expected testimony— marked as an appellate exhibit and presented in court, but excluded from the deliberation room.[13]

## III. CONCLUSION

The findings and sentence are affirmed.

Senior Judge MARKS and Judge FULTON concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[13] However, unlike a stipulation of expected testimony, the written statement would be read aloud to the members by the victim, his or her counsel, or the court instead of by one of the parties.