UNITED STATES, Appellee

v.

Jeremy R. WALLACE, Staff Sergeant
U.S. Air Force, Appellant

No. 07-0194

Crim. App. No. 36174

United States Court of Appeals for the Armed Forces

Argued October 17, 2007

Decided February 13, 2008

STUCKY, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, J., joined.  BAKER and RYAN, JJ., each filed
a separate opinion concurring in the result.


Counsel


For Appellant:  Captain Vicki A. Belleau (argued); Lieutenant
Colonel Mark R. Strickland and Major John N. Page III (on
brief).

For Appellee:  Captain Jason M. Kellhofer (argued); Colonel
Gerald R. Bruce and Major Matthew S. Ward (on brief).


Military Judge:  Anne L. Burman


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

Judge STUCKY delivered the opinion of the Court.

We granted Appellant's petition to determine whether the military judge erred when he denied a defense motion to suppress the results of a search of Appellant's computer.  We hold that the military judge correctly denied the motion and affirm the decision of the United States Air Force Court of Criminal Appeals.

I.

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification each of carnal knowledge, sodomy with a child, and possessing child pornography, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 934 (2000), respectively.  The sentence adjudged by the court-martial, and approved by the convening authority, consisted of a dishonorable discharge, confinement for six months, and reduction to the lowest enlisted grade.

II.

Appellant's conviction stems from the sexual relationship he pursued with a fifteen-year-old female military dependent, TND.  In the course of pursuing their investigation, two special agents of the Air Force Office of Special Investigations (AFOSI) questioned Appellant on April 8, 2003.  After being read his Article 31, UCMJ, 10 U.S.C. § 831 (2000), rights, Appellant

spoke with the agents, only to ultimately request a lawyer. He agreed to proceed without a lawyer when investigators could not make contact with the Area Defense Counsel. According to Appellant's testimony, the agents informed him that their investigation would reveal enough evidence to sentence Appellant to confinement for life and would require Appellant to register as a sex offender. Since Appellant admitted that he communicated with TND via e-mail and instant messenger, the AFOSI agents explained that they wanted to search Appellant's personal computer for evidence. Appellant signed an AF Form 1364, entitled, "Consent for Search and Seizure," and consented to the general search of his home and computer.

After questioning Appellant, both AFOSI agents escorted him back to his house, where the three met another agent (apparently recruited to help disconnect and transport the computer), Appellant's first sergeant, and a chaplain. Appellant's wife arrived home shortly thereafter. Though he initially led the agents to his computer, once Appellant and his wife noticed the agents removing it, they objected. He testified that he told the agents the following:

> [The computer] has our life on it. It has our photo
> albums on it. It's got our banking on it. All of our
> financial stuff is on there. You know, I use it to do
> all of our bill paying and everything else. Our
> online business is on there. I was like "You can't
> take it." Then my wife even started going nuts at
> that time.

In making her findings of fact on consent to the computer's removal, the military judge apparently relied on the testimony of the chaplain present at the search. He testified that Appellant protested when the investigators began removing the computer and that Appellant ultimately acquiesced -- stating, "Well, okay" -- after the agents explained "they had to take it." That is, after Appellant expressed his displeasure with the seizure of his computer, one of the investigators explained that they had to take the computer as a matter of routine. Only then, and in apparent resignation to the investigators' actions (according to the military judge) did Appellant acquiesce to the seizure.

The investigators then removed the computer and transported it to the laboratory. The day-long forensic analysis revealed the e-mail and chat traffic between Appellant and TND, as well as files containing child pornography. Following standard practice, AFOSI agents copied the computer's hard drive. A judge advocate at the legal office telephoned investigators on April 10, 2003 to report that Appellant had formally revoked his consent. In response to this development, the agents obtained a search authorization from a military magistrate. One of the agents testified that even if Appellant had never provided consent, or revoked the previously given consent, he would have sought search authorization from the magistrate in any event.

4

At trial, Appellant's defense counsel made a motion to suppress all evidence obtained from the search of Appellant's computer on the theory that Appellant involuntarily consented in the first place or, alternatively, revoked consent when he told agents not to take the computer. The military judge denied the motion and concluded that Appellant had freely consented and only withdrew consent on April 10, 2003 after child pornography had been discovered on the computer. She also found that even if Appellant had revoked his consent at the search site, the Government would have inevitably discovered the images because there was probable cause to search for e-mails and instant messages related to Appellant's relationship with TND. The Air Force Court of Criminal Appeals affirmed those findings. United States v. Wallace, 2006 CCA LEXIS 282, 2006 WL 3085641 (A.F. Ct. Crim. App. Oct. 30, 2006) (unpublished).

### III.

Appellant argues that the search of his home should have been more limited in scope and, in any event, should have stopped after he revoked his consent and merely acquiesced to the color of authority. Under Appellant's theory, the military judge erred when she admitted the evidence of child pornography from the computer's hard drive.

We review that ruling for an abuse of discretion. United States v. Rodriguez, 60 M.J. 239, 246 (C.A.A.F. 2004). Findings

5

of fact and conclusions of law are reviewed under the clearly erroneous and de novo standards, respectively.  Id.

We find that even though Appellant initially consented to a general search of his home and computer, his subsequent exhortation to the AFOSI agents revoked any consent to seize the computer.  However, while Appellant's ultimate acquiescence to the seizure came under pressure from authority, we find no error in the military judge's denial of Appellant's motion to suppress because AFOSI would have inevitably discovered the child pornography pursuant to a validly executed search authorization based on probable cause.

### A.

Military Rule of Evidence (M.R.E.) 314(e)(3) states that consent to search "may be limited in any way by the person granting consent, including limitations in terms of time, place, or property and may be withdrawn at any time."  Appellant argues that because he gave his consent to search while under the impression that AFOSI agents would merely take copies of certain e-mails, the agents' decision to take the computer itself went beyond the limits that he had imposed on the search in the first place.  M.R.E. 314(e)(3).

That argument does not fit the facts of this case. Appellant's signed "Consent for Search and Seizure" form shows that he explicitly consented to a broad search that allowed

6

AFOSI agents to search Appellant's "residence -- 118-1 Maine St. TAFB (Travis Air Force Base), CA; [and his] computer."  The form expressly gives investigators permission to "take any letters, papers, materials, articles or other property they consider to be evidence of an offense."  It is the objective reasonableness of the consent -- not Appellant's supposed impression -- that controls.

M.R.E. 314(e)(3) implements the limited scope rule of Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973), which requires investigators to account for any express or implied limitations on a consent to search.  Those limitations, however, cannot be determined on the basis of the subjective intentions of the consenting party.  As the Supreme Court concluded in Florida v. Jimeno, 500 U.S. 248 (1991), the standard is "that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  Id. at 251 (rejecting the accused's attempt to suppress evidence of cocaine possession by arguing that while he consented to a general car search at a traffic stop, he believed that consent did not permit the officer to open a closed bag that ultimately contained cocaine).  Clearly, a reasonable person could conclude that an authorization permitting the search and seizure of "my computer" would permit AFOSI

investigators not only to search, but also to remove the computer from the premises.

B.

Whatever the scope of his initial consent, Appellant argues that the military judge erred when she denied Appellant's motion to suppress the evidence because Appellant clearly revoked that consent when he stated "[y]ou can't take [the computer]." Appellant, however, conflates two separate concepts: the search and the seizure. His exhortation may have revoked his consent to seize the computer, but disapproval of the seizure cannot, without more, affect the consent to search in the first place.

A seizure of property, for purposes of the Fourth Amendment, occurs "when there is some meaningful interference with an individual's possessory interest in . . . property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). As such, a seizure can occur either with or without an attendant search. See, e.g., Soldal v. Cook County, 506 U.S. 56, 62 (1992) (holding that a police tow of tenant's mobile home to dispossess that tenant constituted a seizure under the Fourth Amendment because the "Amendment protects property as well as privacy"). In either case, the search and the seizure necessitate separate analyses under the Fourth Amendment. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989) (noting that the warrantless seizure of blood from railroad employees and the

8

subsequent chemical analysis of that blood constituted separate invasions of the employees' privacy interests). If searches and seizures are separate concepts, consent to one is not, without more, consent to the other; similarly, revoking consent to one does not of itself revoke consent to the other.

Appellant signed a "Consent for Search and Seizure" that clearly gave AFOSI the right to search Appellant's residence and computer and to take away anything they considered evidence of an offense. His objection -- "[y]ou can't take it" -- clearly embraced the seizure of the computer, and nothing more. As such, while Appellant consented to both a search and any attendant seizures, his pleas to investigators to leave the computer revoked his consent to this particular seizure, but not to the search.

C.

Appellant's attempt, pursuant to Georgia v. Randolph, 547 U.S. 103 (2006), to pin evidence of consent revocation on his wife's objection to the computer's seizure fails because Randolph is inapplicable to this case. Randolph stands for the narrow proposition that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." Id. at 120. Randolph would not permit a non-accused

9

co-resident to supersede the wishes of the accused co-resident because, after all, Fourth Amendment rights "are personal rights which, like some other constitutional rights, may not be vicariously asserted." Alderman v. United States, 394 U.S. 165, 174 (1969).

D.

As soon as Appellant revoked his consent to the seizure, AFOSI agents informed him that "they would have to take the computer" as "a matter of routine." Appellant acceded, but argues that this second so-called consent amounted to mere passive acquiescence to the color of authority in violation of Schneckloth v. Bustamonte. We agree, and find that under the totality of the circumstances, Appellant's acquiescence did not constitute free and voluntary consent to the computer's seizure after revocation of his initial consent to seize.

We determine voluntariness from all the circumstances. Schneckloth, 412 U.S. at 226-27 (applying a totality-of-the-circumstances analysis and citing cases in which the Supreme Court has analyzed the facts for voluntariness on its own).

The Air Force court has laid out the following non-exhaustive factors with respect to the voluntariness of consent: (1) the degree to which the suspect's liberty was restricted; (2) the presence of coercion or intimidation; (3) the suspect's awareness of his right to refuse based on inferences of the

suspect's age, intelligence, and other factors; (4) the suspect's mental state at the time; (5) the suspect's consultation, or lack thereof, with counsel; and (6) the coercive effects of any prior violations of the suspect's rights.  United States v. Murphy, 36 M.J. 732, 734 (A.F.C.M.R. 1992); United States v. Baker, 45 M.J. 538, 541 (A.F. Ct. Crim. App. 1996) (adopting the test from Murphy).  Based on this test, which we adopt, Appellant's ultimate consent to the computer's seizure lacks sufficient indicia of voluntariness.

Appellant clearly faced restrictions on his liberty.  The military judge stated in her findings of fact that three individuals escorted Appellant from the AFOSI building to his home -- the two AFOSI agents who conducted the initial interrogation and Appellant's first sergeant, Master Sergeant Kemp.  Another AFOSI agent joined, along with a chaplain.  That Appellant was never technically under apprehension is not dispositive; no court that has analyzed this prong has considered apprehension determinative.  See, e.g., United States v. Olivier-Becerril, 861 F.2d 424, 426 (5th Cir. 1988) (noting that the defendant was not free to leave the inspection area at a Border Patrol checkpoint even though he was never technically in custody or under arrest).  Authority figures, one of whom was Appellant's first sergeant and thus responsible for unit discipline, not only helped conduct the search, but also

11

escorted Appellant from the AFOSI building to his home. If Appellant faced no restrictions on his liberty, the escort would have been unnecessary.

The facts of the escort and the presence of several authority figures also created a coercive and intimidating atmosphere that stifled Appellant's inclination to refuse consent to the computer's seizure once the AFOSI agents informed Appellant that they had to take the computer as a matter of routine.

Furthermore, though Appellant was a twenty-six-year-old staff sergeant with nearly eight years of service, it is doubtful that he knew he could withdraw consent once given. The signed consent form does not explicitly state that the signer may withdraw consent; Article 31, UCMJ, warnings do not include an addendum clarifying that consent, once given, can be withdrawn; and none of the AFOSI agents testified that he advised Appellant that he could withdraw his consent at any time. What is more, when Appellant objected to the removal of the computer, the seizing agent stated that they "would have to take the computer" as a matter of routine procedure. Regardless of his prior belief, Appellant likely believed that he could not refuse consent given the agent's assurance that seizure was a routine requirement.

Finally, Appellant never consulted counsel throughout his questioning and the subsequent search.  As such, since four of the six Murphy factors weigh against a finding of voluntary consent, we hold that Appellant's ultimate consent to the seizure of the computer was not a valid consent, but rather mere acquiescence to the color of authority.

E.

Notwithstanding the validity of the seizure, the military judge did not err when she denied Appellant's motion to suppress because, as she found, the evidence would have been inevitably discovered pursuant to a validly executed warrant.

The doctrine of inevitable discovery creates an exception to the exclusionary rule allowing admission of evidence that, although obtained improperly, would have been obtained by another lawful means.  Nix v. Williams, 467 U.S. 431, 444 (1984).  M.R.E. 311(b)(2) embodies this exception, stating that "[e]vidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made."  This Court explained the doctrine in United States v. Kozak, 12 M.J. 389, 394 (C.M.A. 1982) and, more recently, in United States v. Owens, 51 M.J. 204 (C.A.A.F. 1999), where this Court upheld the legality of a warrantless search of the appellant's car and seizure of stolen stereo equipment because

13

overwhelming probable cause and routine police procedure made discovery of the evidence inevitable.  Id. at 210-11.

In this case, the images of child pornography on Appellant's computer hard drive would similarly have inevitably been discovered.  As the military judge correctly concluded, had Appellant not ultimately consented to the seizure of the computer, the AFOSI investigators would have sought and obtained a search authorization based on probable cause.  After all, during his interrogation, Appellant admitted to a sexual relationship with a young girl with whom he communicated mostly via e-mail and instant messenger.  This alone encouraged investigators to focus on the computer as a source of evidence and created sufficient probable cause to allow AFOSI to obtain an authorization to search for, and seize e-mails and messages between Appellant and TND.  Though the authorization would have been limited to e-mails and messages, one of the AFOSI investigators testified that the forensic software employed would have skimmed the computer's hard drive, recovering all saved data.  As the military judge concluded, investigators would have had to sift through all the captured data to find relevant e-mail traffic.  As such, the files containing child pornography would have been inevitably discovered through this valid search.  It should also be noted that although we have ultimately concluded that the initial consent to seize had been

14

terminated as a matter of law, the fact that the law enforcement officers proceeded on the belief that they had consent underscores that this is not a case involving a deliberate intent to evade the warrant requirement.

## IV.

We therefore find no error in the military judge's denial of Appellant's motion to suppress and affirm the decision of the United States Air Force Court of Criminal Appeals.

BAKER, Judge (concurring in the result):

I concur with the result reached by the Court today, and agree that Randolph v. Georgia, 547 U.S. 103 (2006), does not apply to this case. However, I write separately to distinguish my views regarding the inevitable discovery doctrine. The majority's approach parts from United States Supreme Court precedent as well as one of the fundamental objectives of the Fourth Amendment, which is to encourage, and in most cases, compel the government to obtain a warrant (or in military context command authorization) before conducting a search or seizure encompassed within the Amendment's scope. Further, I would affirm this case on the ground that Appellant consented to the subsequent seizure of his computer at his house. In this respect, the military judge's findings of fact are not clearly erroneous.

I.  Inevitable Discovery

The Court's decision regarding the inevitability of the discovery of the child pornography on Appellant's computer is predicated on at least three assumptions: first, the Court assumes that, because questioning of Appellant and the victim revealed that the two communicated over the Internet, AFOSI agents would have used that information to show probable cause in an application to search Appellant's computer for e-mails and instant messages; second, the Court assumes that a detached

magistrate would have granted a search warrant based on that evidence; and third, it is assumed that, having received authorization to search for e-mails and instant messages, AFOSI would have inevitably also discovered the images of child pornography on Appellant's hard drive. This string of assertions does not bear the indices of inevitability of discovery found in cases such as Nix v. Williams, 467 U.S. 431 (1984), and the doctrine that evolved from that case. Rather, the majority adopts in its place a "could have-would have" approach to the warrant requirement.

First, there is no evidence in the record that AFOSI actually attempted to obtain a search warrant.[1] Instead, the Court today essentially holds that the unadjudicated strength of the prosecution's case was sufficient to permit a violation of Appellant's right against unreasonable search and seizure. Such an interpretation of the inevitable discovery doctrine is too broad to be constitutionally tenable. As the Fourth Circuit has held, the inevitable discovery doctrine "cannot rescue evidence obtained via an unlawful search simply because probable cause existed to obtain a warrant when the government presents no evidence that the police would have obtained a warrant. Any

---

[1] Had the AFOSI at least dispatched an agent to obtain a warrant, the subsequent search could arguably have been admissible under the inevitable discovery doctrine. See United States v. Lamas, 930 F.2d 1099, 1102 (5th Cir. 1991).

other rule would emasculate the Fourth Amendment." United States v. Allen, 159 F.3d 832, 842 (4th Cir. 1998); see also United States v. Cherry, 759 F.2d 1196, 1206 (5th Cir. 1985); United States v. Johnson, 22 F.3d 674, 683 (6th Cir. 1994); United States v. Mejia, 69 F.3d 309, 319 (9th Cir. 1995); United States v. Souza, 223 F.3d 1197, 1203 (10th Cir. 2000). Today's holding creates an exception that swallows the rule, against which Justice Harlan warned when he wrote, "[w]ere federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified." Jones v. United States, 357 U.S. 493, 498 (1958).

The Court today points to our previous holdings in United States v. Kozak, 12 M.J. 389 (C.M.A. 1982), and United States v. Owens, 51 M.J. 204 (C.A.A.F. 1999), for the proposition that the inevitable discovery doctrine would permit the admission of evidence obtained in violation of a defendant's Fourth Amendment rights. Neither of these cases is applicable here, however, since in each case the admission of the evidence was justified on grounds derived from a recognized exception to the warrant requirement, and independent from the unlawful search. In Kozak, the Court concluded that Criminal Investigation Division (CID) agents who illegally opened a briefcase containing stolen

3

goods would inevitably have discovered the same as part of a search incident to the arrest of the suspect who later claimed the briefcase.  12 M.J. at 393.  Moreover, Owens concerned the search of an automobile, a location that permits warrantless searches, so long as probable cause can be shown.  51 M.J. at 209; see Coolidge v. New Hampshire, 403 U.S. 443, 460 (1971).  In the present case, no similar exception to the warrant requirement exists to independently justify the search of Appellant's computer.  It bears repeating:  in order for the evidence to have been admissible under the inevitable discovery doctrine, the Government would have to have shown that investigators "possessed, or were actively pursuing, evidence or leads" that independently "would have led to the discovery of the evidence."  Kozak, 12 M.J. at 394.  No such active, independent line of investigation was being pursued in this case before the issue of Appellant's consent arose.

Second, assuming that AFOSI could have searched Appellant's computer for e-mails and instant message traffic, it does not follow that discovery of the child pornography would have been inevitable.  That the search software at the time of the examination of Appellant's computer was too primitive to permit a focused search for e-mails and instant messages does not excuse the resulting violation of Appellant's Fourth Amendment rights.

4

## II.   Consent to Seize and Search

Although I disagree with the majority's application of inevitable discovery, I would affirm this case.  Like the majority, I find the critical factual point to have occurred in Appellant's home.  Having revoked his consent to the initial search and seizure, Appellant either consented anew to the seizure of his computer or merely acquiesced to that seizure in the face of the law enforcement presence he encountered.  I also agree with the majority that the six-part factors approach in United States v. Murphy, 36 M.J. 732, 734 (A.F.C.M.R. 1992), is an appropriate mechanism with which to evaluate this issue. However, while there are arguments on both sides, I balance the factors differently than the majority and conclude that Appellant did not merely acquiesce to authority in consenting to the search of his computer.

The first factor is the degree to which the suspect's liberty was restricted (e.g., whether the suspect was under escort, under arrest or apprehension, held in the office of law enforcement agents, or called to the commander's office). Murphy, 36 M.J. at 734.  This Court has adopted an objective test as to whether one is in police custody.  United States v. Catrett, 55 M.J. 400, 409 (C.A.A.F. 2001).  Furthermore, the United States Supreme Court has stated that "[i]n determining whether an individual was in custody, a court must examine all

of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)) (quotation marks omitted).

In this case, the record shows that Appellant was brought neither to the AFOSI office nor his home under arrest. Appellant did not feel he was free to leave, but he was neither handcuffed nor restrained in any way. Thus, even if Appellant subjectively believed that he was not free to leave, the military judge objectively found otherwise. This ruling is not clearly erroneous. United States v. Rader, 65 M.J. 30, 32 (C.A.A.F. 2007). Of course, had the military judge found that Appellant was not free to leave, that factor alone would not necessarily negate his consent, since none of the factors identified in Murphy are necessarily determinative. 36 M.J. at 734.

The second factor concerns the presence of any coercion, promises, direct orders, threats (including threats that if consent to search is withheld, an authority to search will be obtained), or other forms of intimidation or pressure. Id. Here, the military judge specifically found that "Staff Sergeant Wallace's consent was not given under coercion, force or

threats." Again, there is nothing in the record that would show that such a finding was clearly erroneous. The military judge's determination is supported in many respects by the presence of the base chaplain during the search of Appellant's home. First, the presence of the chaplain tempers concern that Appellant was in some manner coerced into consenting to an overbearing or overwhelming law enforcement presence, because the chaplain was someone to whom Appellant might have reached out if he was feeling unduly pressured.

Second, the chaplain served as a neutral witness to the proceedings. Thus, the military judge was not limited to considering the statements of witnesses who might have had biases one way or the other.

Finally, even considering the chaplain's testimony in a light most favorable to Appellant, the chaplain did not testify to a coercive atmosphere. He stated:

> I would not use the word "protest." I would probably use the word "resisted." . . . . He initially said "Don't take the computer." But then they said "Well it is just a matter of routine. We've got to do this." His response was "Well, okay." And then he seemed resigned to them taking it at that particular point.

To me this does not describe consent "quickly and easily given" as the military judge stated. But it does look more like acceptance of the inevitable, with some resignation, rather than "mere acquiescence" to a law enforcement presence. Therefore,

in light of this testimony, and the military judge's conclusions drawn from it, I would conclude that the military judge's findings of fact were not clearly erroneous and that her conclusions of law were correct.

Alternatively, if one discounts the effect of the presence of the chaplain, the question of whether Appellant was coerced into consenting would ultimately come down to Appellant's word against those of the AFOSI agents, and this is insufficient to find clear factual error on the part of the military judge. As the United States Supreme Court noted in Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985), "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous."

The third Murphy factor considers Appellant's awareness of his right to refuse consent. 36 M.J. at 732. The record reflects that the consent form Appellant initially signed included the acknowledgment, "I also understand that if I do not consent, a search cannot be made without a warrant or other authorization recognized in law." However, Appellant was not expressly advised he could refuse consent during the subsequent search and seizure at this home. Neither does the record reflect facts sufficient to infer such knowledge based on Appellant's age, intelligence, training and experience. Arguably, the record favors a finding that Appellant was not

aware that he could revoke his consent.  Although Appellant was a noncommissioned officer with almost eight years of military service, this might be insufficient -- in light of the agents' failure to inform him he could revoke consent -- to presume Appellant was aware of the nuances of his Fourth Amendment rights.

With respect to the fourth Murphy factor, 36 M.J. at 734, it seems intuitive that an individual placed in Appellant's position -- accused of a crime, his house searched, and facing the consequences of his alleged act on his family relations -- would be under considerable stress.  However, such anxiety cannot, by itself, serve to undermine consent.  If the alternative were true, every defendant accused of a crime would be found to lack free will.

The fifth factor listed in Murphy is whether the suspect had consulted with counsel.  36 M.J. at 734.  The military judge found that during questioning by AFOSI, Appellant requested counsel, and was told by AFOSI agents that the Area Defense Counsel was unavailable.  However, it was Appellant who subsequently reinitiated the line of questioning that led to the search of Appellant's home, and Appellant waived his right to counsel before questioning resumed.  Thus, Appellant is hard pressed to argue that he was denied counsel.

The line between true consent and mere acquiescence in the presence of law enforcement can be quite ephemeral.  At some point, I imagine many accused persons who become aware that their conduct has been discovered acquiesce to law enforcement requests because they feel, in a descriptive sense, the inevitable consequence of their actions.  From the accused's standpoint, this would seem much closer to mere acquiescence than meaningful choice and consent.  The real question then is not whether the accused merely acquiesced in the face of law enforcement pressure or presence, but rather, whether or not he was aware that he had a choice to consent or not.  That is, of course, different from concluding that as a result of the stress of the situation, one has no real good choice but only bad options that lead to the same result.

When the totality of the circumstances is considered in this case, it becomes evident that four of the five Murphy factors relevant to the case at hand argue for concluding that Appellant fell into this latter category, and as a matter of law, consented to AFOSI seizing and searching his computer.  Here, Appellant's age, experience, intelligence, and military grade are relevant.  We are not dealing with a new enlistee.  Additionally, the presence of the chaplain and his testimony are also central to this conclusion.

Thus, while there is nothing inevitable about the discovery of the child pornography on Appellant's computer, his valid consent rendered the evidence properly admissible.  I therefore concur in the result.

United States v. Wallace, No. 07-0194/AF

RYAN, Judge (concurring in the result):

I agree with the reasoning undertaken in Part II of Judge Baker's separate opinion, join him in concluding that Appellant consented to the search of his computer, and thus concur in the result reached by the Court today.