BAKER, Judge
(concurring in the result):
I concur with the result reached by the Court today, and agree that Georgia v. Randolph, 547 U.S. 103, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006), does not apply to this case. However, I write separately to distinguish my views regarding the inevitable discovery doctrine. The majority’s approach parts from United States Supreme Court precedent as well as one of the fundamental objectives of the Fourth Amendment, which is to encourage, and in most cases, compel the government to obtain a warrant (or in military context command authorization) before conducting a search or seizure encompassed within the Amendment’s scope. Further, I would affirm this case on the ground *11 that Appellant consented to the subsequent seizure of his computer at his house. In this respect, the military judge’s findings of fact are not clearly erroneous.
I. Inevitable Discovery
The Court’s decision regarding the inevitability of the discovery of the child pornography on Appellant’s computer is predicated on at least three assumptions: first, the Court assumes that, because questioning of Appellant and the victim revealed that the two communicated over the Internet, AFOSI agents would have used that information to show probable cause in an application to search Appellant’s computer for e-mails and instant messages; second, the Court assumes that a detached magistrate would have granted a search warrant based on that evidence; and third, it is assumed that, having received authorization to search for e-mails and instant messages, AFOSI would have inevitably also discovered the images of child pornography on Appellant’s hard drive. This string of assertions does not bear the indices of inevitability of discovery found in cases such as Nix v. Williams, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and the doctrine that evolved from that case. Rather, the majority adopts in its place a “could have-would have” approach to the warrant requirement.
First, there is no evidence in the record that AFOSI actually attempted to obtain a search warrant.[1] Instead, the Court today essentially holds that the unadjudicated strength of the prosecution’s case was sufficient to permit a violation of Appellant’s right against unreasonable search and seizure. Such an interpretation of the inevitable discovery doctrine is too broad to be constitutionally tenable. As the Fourth Circuit has held, the inevitable discovery doctrine “cannot rescue evidence obtained via an unlawful search simply because probable cause existed to obtain a warrant when the government presents no evidence that the police would have obtained a warrant. Any other rule would emasculate the Fourth Amendment.” United States v. Allen, 159 F.3d 832, 842 (4th Cir.1998); see also United States v. Cherry, 759 F.2d 1196, 1206 (5th Cir.1985); United States v. Johnson, 22 F.3d 674, 683 (6th Cir.1994); United States v. Mejia, 69 F.3d 309, 319 (9th Cir.1995); United States v. Souza, 223 F.3d 1197, 1203 (10th Cir.2000). Today’s holding creates an exception that swallows the rule, against which Justice Harlan warned when he wrote, “[w]ere federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified.” Jones v. United States, 357 U.S. 493, 498, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).
The Court today points to our previous holdings in United States v. Kozak, 12 M.J. 389 (C.M.A.1982), and United States v. Owens, 51 M.J. 204 (C.A.A.F.1999), for the proposition that the inevitable discovery doctrine would permit the admission of evidence obtained in violation of a defendant’s Fourth Amendment rights. Neither of these cases is applicable here, however, since in each case the admission of the evidence was justified on grounds derived from a recognized exception to the warrant requirement, and independent from the unlawful search. In Kozak, the Court concluded that Criminal Investigation Division (CID) agents who illegally opened a briefcase containing stolen goods would inevitably have discovered the same as part of a search incident to the arrest of the suspect who later claimed the briefcase. 12 M.J. at 393. Moreover, Owens concerned the search of an automobile, a location that permits warrantless searches, so long as probable cause can be shown. 51 M.J. at 209; see Coolidge v. New Hampshire, 403 U.S. 443, 460, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In the present case, no similar exception to the warrant requirement exists to independently justify the search of Appellant’s computer. It bears repeating: in order for the evidence to have been admissible *12 under the inevitable discovery doctrine, the Government would have to have shown that investigators “possessed, or were actively pursuing, evidence or leads” that independently “would have led to the discovery of the evidence.” Kozak, 12 M.J. at 394. No such active, independent line of investigation was being pursued in this case before the issue of Appellant’s consent arose.
Second, assuming that AFOSI could have searched Appellant’s computer for e-mails and instant message traffic, it does not follow that discovery of the child pornography would have been inevitable. That the search software at the time of the examination of Appellant’s computer was too primitive to permit a focused search for e-mails and instant messages does not excuse the resulting violation of Appellant’s Fourth Amendment rights.
II. Consent to Seize and Search
Although I disagree with the majority’s application of inevitable discovery, I would affirm this case. Like the majority, I find the critical factual point to have occurred in Appellant’s home. Having revoked his consent to the initial search and seizure, Appellant either consented anew to the seizure of his computer or merely acquiesced to that seizure in the face of the law enforcement presence he encountered. I also agree with the majority that the six-part factors approach in United States v. Murphy, 36 M.J. 732, 734 (A.F.C.M.R.1992), is an appropriate mechanism with which to evaluate this issue. However, while there are arguments on both sides, I balance the factors differently than the majority and conclude that Appellant did not merely acquiesce to authority in consenting to the search of his computer.
The first factor is the degree to which the suspect’s liberty was restricted (e.g., whether the suspect was under escort, under arrest or apprehension, held in the office of law enforcement agents, or called to the commander’s office). Murphy, 36 M.J. at 734. This Court has adopted an objective test as to whether one is in police custody. United States v. Catrett, 55 M.J. 400, 409 (C.A.A.F. 2001). Furthermore, the United States Supreme Court has stated that “[i]n determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.” Stansbury v. California, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (quoting California v. Beheler, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983)) (quotation marks omitted).
In this case, the record shows that Appellant was brought neither to the AFOSI office nor his home under arrest. Appellant did not feel he was free to leave, but he was neither handcuffed nor restrained in any way. Thus, even if Appellant subjectively believed that he was not free to leave, the military judge objectively found otherwise. This ruling is not clearly erroneous. United States v. Rader, 65 M.J. 30, 32 (C.A.A.F. 2007). Of course, had the military judge found that Appellant was not free to leave, that factor alone would not necessarily negate his consent, since none of the factors identified in Murphy are necessarily determinative. 36 M.J. at 734.
The second factor concerns the presence of any coercion, promises, direct orders, threats (including threats that if consent to search is withheld, an authority to search will be obtained), or other forms of intimidation or pressure. Id. Here, the military judge specifically found that “Staff Sergeant Wallace’s consent was not given under coercion, force or threats.” Again, there is nothing in the record that would show that such a finding was clearly erroneous. The military judge’s determination is supported in many respects by the presence of the base chaplain during the search of Appellant’s home. First, the presence of the chaplain tempers concern that Appellant was in some manner coerced into consenting to an overbearing or overwhelming law enforcement presence, because the chaplain was someone to whom Appellant might have reached out if he was feeling unduly pressured.
Second, the chaplain served as a neutral witness to the proceedings. Thus, the military judge was not limited to considering the *13 statements of witnesses who might have had biases one way or the other.
Finally, even considering the chaplain’s testimony in a light most favorable to Appellant, the chaplain did not testify to a coercive atmosphere. He stated:
I would not use the word “protest.” I would probably use the word “resisted.” ____ He initially said “Don’t take the computer.” But then they said ‘Well it is just a matter of routine. We’ve got to do this.” His response was Well, okay.” And then he seemed resigned to them taking it at that particular point.
To me this does not describe consent “quickly and easily given” as the military judge stated. But it does look more like acceptance of the inevitable, with some resignation, rather than “mere acquiescence” to a law enforcement presence. Therefore, in light of this testimony, and the military judge’s conclusions drawn from it, I would conclude that the military judge’s findings of fact were not clearly erroneous and that her conclusions of law were correct.
Alternatively, if one discounts the effect of the presence of the chaplain, the question of whether Appellant was coerced into consenting would ultimately come down to Appellant’s word against those of the AFOSI agents, and this is insufficient to find clear factual error on the part of the military judge. As the United States Supreme Court noted in Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), “[wjhere there are two permissible views of the evidence, the fact finder’s choice between them cannot be clearly erroneous.”
The third Murphy factor considers Appellant’s awareness of his right to refuse consent. 36 M.J. at 732. The record reflects that the consent form Appellant initially signed included the acknowledgment, “I also understand that if I do not consent, a search cannot be made without a warrant or other authorization recognized in law.” However, Appellant was not expressly advised he could refuse consent during the subsequent search and seizure at this home. Neither does the record reflect facts sufficient to infer such knowledge based on Appellant’s age, intelligence, training and experience. Arguably, the record favors a finding that Appellant was not aware that he could revoke his consent. Although Appellant was a noncommissioned officer with almost eight years of military service, this might be insufficient — in light of the agents’ failure to inform him he could revoke consent — to presume Appellant was aware of the nuances of his Fourth Amendment rights.
With respect to the fourth Murphy factor, 36 M.J. at 734, it seems intuitive that an individual placed in Appellant’s position — accused of a crime, his house searched, and facing the consequences of his alleged act on his family relations — would be under considerable stress. However, such anxiety cannot, by itself, serve to undermine consent. If the alternative were true, every defendant accused of a crime would be found to lack free will.
The fifth factor listed in Murphy is whether the suspect had consulted with counsel. 36 M.J. at 734. The military judge found that during questioning by AFOSI, Appellant requested counsel, and was told by AFOSI agents that the Area Defense Counsel was unavailable. However, it was Appellant who subsequently reinitiated the line of questioning that led to the search of Appellant’s home, and Appellant waived his right to counsel before questioning resumed. Thus, Appellant is hard pressed to argue that he was denied counsel.
The line between true consent and mere acquiescence in the presence of law enforcement can be quite ephemeral. At some point, I imagine many accused persons who become aware that their conduct has been discovered acquiesce to law enforcement requests because they feel, in a descriptive sense, the inevitable consequence of their actions. From the accused’s standpoint, this would seem much closer to mere acquiescence than meaningful choice and consent. The real question then is not whether the accused merely acquiesced in the face of law enforcement pressure or presence, but rather, whether or not he was aware that he had a choice to consent or not. That is, of *14 course, different from concluding that as a result of the stress of the situation, one has no real good choice but only bad options that lead to the same result.
When the totality of the circumstances is considered in this case, it becomes evident that four of the five Murphy factors relevant to the case at hand argue for concluding that Appellant fell into this latter category, and as a matter of law, consented to AFOSI seizing and searching his computer. Here, Appellant’s age, experience, intelligence, and military grade are relevant. We are not dealing with a new enlistee. Additionally, the presence of the chaplain and his testimony are also central to this conclusion.
Thus, while there is nothing inevitable about the discovery of the child pornography on Appellant’s computer, his valid consent rendered the evidence properly admissible. I therefore concur in the result.

. Had the AFOSI at least dispatched an agent to obtain a warrant, the subsequent search could arguably have been admissible trader the inevitable discovery doctrine. See United States v. Lamas, 930 F.2d 1099, 1102 (5th Cir.1991).